# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4041

_____

Julio Carrasco-Palos

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 5, 2017
Filed: June 22, 2017
[Unpublished]

_____

Before WOLLMAN and LOKEN, Circuit Judges, and ROSSITER, District Judge.[1]

_____

PER CURIAM.

Julio Carrasco-Palos, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal of an

---

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska, sitting by designation.

immigration judge's (IJ) decision denying his motion to reopen his immigration proceedings *sua sponte*. We dismiss the petition for lack of jurisdiction.

Carrasco first entered the United States in 1987 and became a lawful permanent resident in January 1988. He was arrested in Missouri in October 1995 while in possession of more than thirty kilograms of marijuana. Following a state-court bench trial, Carrasco was found guilty on February 20, 1997, of second-degree drug trafficking, a class B felony under Missouri law.

The former Immigration and Naturalization Service (INS) issued Carrasco a Notice to Appear (NTA) on October 1, 1997, charging him as removable from the United States for having been convicted of both a controlled substance offense, 8 U.S.C. § 1227(a)(2)(B)(i), and an aggravated felony, id. §§ 1227(a)(2)(A)(iii), 1101(a)(43). Appearing *pro se* at his removal proceedings, Carrasco "admitted and conceded" the charges set forth in the NTA. On October 9, 1997, an immigration judge determined on the basis of Carrasco's admissions that he was removable on both charges and that he was not "eligible for relief statutorily." Carrasco was physically removed from the United States on October 22, 1997. He did not appeal the determination to the BIA.

In 2009, Carrasco unlawfully reentered the United States, using his expired lawful-permanent-resident card. Carrasco was apprehended by the Department of Homeland Security (DHS) on August 16, 2013, and the DHS reinstated his 1997 removal order under 8 U.S.C. § 1231(a)(5). Carrasco was physically removed from the United States the same day.

Carrasco filed a motion to reopen his 1997 removal order on August 22, 2014, more than sixteen years after the order was entered and more than a year after it was reinstated. Carrasco acknowledged that his motion was untimely, but he asserted that his 1997 removal proceedings constituted "an exceptional situation and a denial of

his due process rights" warranting the IJ's exercise of discretionary authority to reopen the removal order *sua sponte* under 8 C.F.R. § 1003.23(b)(1).[2] Specifically, Carrasco alleged that two "recent" Supreme Court decisions "ma[de] it clear" that he had been eligible in 1997 to seek relief from removal that was then available under 8 U.S.C. § 1182(c) (section 212(c) relief). He contended that he had been wrongly prevented from seeking such relief by the immigration judge's erroneous determination that he was not "eligible for relief statutorily." Carrasco further argued that the statutory bar on reopening a reinstated removal order set forth in 8 U.S.C. § 1231(a)(5) did not apply because he was requesting that his removal order be reopened under the immigration judge's authority to reopen *sua sponte*.

The IJ initially granted Carrasco's motion to reopen *sua sponte*, finding that exceptional circumstances warranted the exercise of discretion to allow Carrasco an opportunity to apply for section 212(c) relief. The DHS filed a motion to reconsider, arguing that the reinstatement of Carrasco's 1997 removal order under § 1231(a) left the IJ without jurisdiction to reopen the removal order, even *sua sponte*. The IJ granted DHS's motion to reconsider and denied Carrasco's motion to reopen, concluding that reopening the 1997 removal order *sua sponte* was precluded both by the statutory bar on reopening a reinstated removal order and by the regulatory bar

---

[2]Motions to reopen before the IJ are governed by 8 C.F.R. § 1003.23, which provides that the IJ "may upon his or her own motion at any time, or upon motion of . . . the alien, reopen . . . any case in which he or she has made a decision, unless jurisdiction is vested with the [BIA]." Motions to reopen before the BIA are governed by 8 C.F.R. § 1003.2(a), which similarly provides that the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision" and further provides that the BIA "has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief.

on reopening a removal order after an alien has departed the United States (the departure bar). See 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 1003.23(b)(1).[3]

The BIA dismissed Carrasco's appeal, agreeing with the IJ that the § 1231(a)(5) statutory bar prohibited reopening the reinstated 1997 removal order and rejecting Carrasco's argument that the statutory bar did not apply to *sua sponte* reopenings. The BIA further determined that even if the § 1231(a)(5) statutory bar did not apply to *sua sponte* reopenings, the regulatory departure bar limited its discretionary authority to reopen the removal order *sua sponte*.

Carrasco's challenge to the BIA's discretionary decision to deny his motion to reopen *sua sponte* fails in light of our decision in Tamenut v. Mukasey, 521 F.3d 1000, 1001 (8th Cir. 2008) (en banc) (per curiam). We explained in Tamenut that the regulation establishing the BIA's authority to reopen *sua sponte*, 8 C.F.R. § 1003.2(a), "provides no guidance as to the BIA's appropriate course of action, sets forth no factors for the BIA to consider in deciding whether to reopen *sua sponte*, places no constraints on the BIA's discretion, and specifies no standards for a court to use to cabin the BIA's discretion." 521 F.3d at 1004. Accordingly, we held that there is "no meaningful standard against which to judge the agency's exercise of discretion [and] the BIA's decision whether to reopen proceedings on its own motion is committed to agency discretion by law." Id.; see also Barajas-Salinas v. Holder, 760 F.3d 905, 907-08 (8th Cir. 2014). We were "mindful" of BIA precedent stating that it may reopen removal proceedings *sua sponte* in "exceptional situations." Tamenut, 521 F.3d at 1004. But given the absence of any "statutory, regulatory, or case-law definition of 'exceptional situation' applicable to the BIA's *sua sponte* power under § 1003.2(a)," there was no "meaningful standard for judging whether the

---

[3]The departure-bar regulation provides that "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 1003.23(b)(1).

BIA [was] *required* to reopen proceedings" *sua sponte*, and thus "the BIA [was] under no obligation to reopen any particular case." Id. at 1004-05 (citations omitted). Accordingly, we concluded that "the BIA's decision whether to reopen proceedings on its own motion under 8 C.F.R. § 1003.2(a) [was] committed to agency discretion by law" and that we were without jurisdiction to review the BIA's discretionary decision. Id. at 1005; see also Kucana v. Holder, 558 U.S. 233, 251 n.18 (2010) (holding that federal courts generally have jurisdiction to review for abuse of discretion the BIA's denial of a motion to reopen, but "express[ing] no opinion on whether federal courts may review the [BIA's] decision not to reopen removal proceedings *sua sponte*" and citing Tamenut).

Although we are without jurisdiction to review the BIA's denial of *sua sponte* reopening of removal proceedings, "we generally do have jurisdiction over any colorable constitutional claim" alleged in a petition for review of such denial. Id. at 1005. Carrasco does not raise a constitutional claim in his petition for review, instead specifically identifying the "issue [as] a question of law," namely, "whether the BIA fully considered whether the statutory/regulatory 'departure bars' can *per se* strip its authority over *sua sponte* reopening." Br. of Petitioner at 10. He notes that several other circuit courts have exercised jurisdiction over a petition for review of the BIA's denial of a motion to reopen *sua sponte* for the limited purpose of determining whether the BIA based its decision on an error of law. See Bonilla v. Lynch, 840 F.3d 575, 588-89 (9th Cir. 2016); Salgado-Toribio v. Holder, 713 F.3d 1267, 1271 (10th Cir. 2013); Pllumi v. Att'y Gen., 642 F.3d 155, 160 (3d Cir. 2011); Mahmood v. Holder, 570 F.3d 466, 469 (2d Cir. 2009). We have acknowledged, but not adopted, this approach, and we decline to do so in these circumstances. See Barajas-Salinas, 760 F.3d at 907-08, 908 n.* ("reserv[ing] judgment on whether this court would accept the approach of Pllumi and Mahmood . . . , given that the exception to judicial review for agency action committed to agency discretion is typically characterized as categorical and the Supreme Court elsewhere has rejected a similar 'theory of partial reviewability'" and questioning "whether 'limited' assertions of

-5-

jurisdiction would be consistent with 5 U.S.C. § 701(a)(2) and this court's decision in <u>Tamenut</u>" (citations omitted)).  Because Carrasco has not raised a colorable constitutional claim, we are without jurisdiction to review the BIA's denial of his motion to reopen his 1997 removal order *sua sponte*.

The petition for review is dismissed.

_____